**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RAVINDRA GOGINENI, <br><br> Plaintiff, <br><br> vs. <br><br> FARGO PACIFIC INC., EDGAR L. McCONNELL, and JAY S.H. PARK, <br><br> Defendants. | CIVIL CASE NO. 17-00096 <br><br> **ORDER RE: MOTION TO DISMISS FOR LACK OF JURISDICTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** |

Before the Court are two motions by Defendants to dismiss this action—one for failure to state a claim upon which relief can be granted, ECF 31, and one for lack of jurisdiction, ECF 39. For the reasons below, the motion to dismiss for lack of jurisdiction is **DENIED**, while the motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Pursuant to Section 8(a) of the Small Business Act, the Small Business Association ("the SBA") administers the 8(a) Business Development Program, promoting the development of small businesses controlled by socially and economically disadvantaged individuals. ECF 20 ("FAC") ¶ 16. As part of this program, the SBA offers "8(a) certification" to small, minority owned businesses, while certain federal contracts are set aside for businesses so certified. *Id.* One of the eligibility requirements for certification is that the business be majority-owned and controlled by socially and economically disadvantaged individuals. *Id.* ¶¶ 16, 19.

Defendant Jay Park was and is the president of Defendant Fargo Pacific ("Fargo"), a general contractor here on Guam. *Id.* ¶¶ 17, 19. He is Asian American and therefore falls within

one of the "presumed groups" of socially disadvantaged individuals. *Id.* ¶ 19. Fargo was certified under the SBA's 8(a) program from 2002 to 2011. *Id.* ¶ 18. During this time, Fargo was awarded two government roofing contracts set aside for 8(a) participants that are the subject of this lawsuit. The first is Contract No. N40192-06-D-2540 ("2006 IDIQ Contract"), a contract worth $9.68-million. *Id.* ¶¶ 1-2. The second is Contract No. N40192-09-D-2710 ("2009 IDIQ Contract"), a contract worth $20.4-million. *Id.*

Plaintiff alleges that, during the time Fargo was certified under the SBA's 8(a) program, Fargo entered into a series of secret consulting agreements with Defendant Edgar L. McConnell—who is not eligible to be an 8(a) participant—intended to circumvent the 8(a) program's requirements. *Id.* ¶ 28. The consulting agreements provided that McConnell would perform work on the contracts at issue and would be entitled to 50% of the Gross Profit on those contracts. *Id.* ¶¶ 32, 55. They also provided that McConnell would "manage all aspects of the project[s] in a manner similar to which he is currently doing so for Western Roofing Service, i[.]e. pricing Task Orders, ordering materials, supervising field management, securing Manufacturers Warranties, insuring contract compliance, etc." ECF 20-1 ¶ 13.

Plaintiff contends that these consulting agreements established a *de facto* joint venture between Fargo and McConnell with respect to the contracts at issue, which was not disclosed to the SBA as mandated under 8(a) program requirements. FAC ¶¶ 38, 63, 67-68. Plaintiff further contends that the joint venture violated SBA regulations and rendered Fargo ineligible for the 8(a) contracts. *Id.* ¶ 68.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

To invoke a federal court's subject-matter jurisdiction, a plaintiff needs to provide only "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke

2

federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite,* 749 F.3d at 1121. "[A] facial attack is easily remedied by leave to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).

Unlike a facial attack, a factual attack contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *NewGen*, 840 F.3d at 614. In resolving a factual attack on jurisdiction, the district court need not presume the truthfulness of the plaintiff's allegations, and it may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039. The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met. *Leite*, 749 F.3d at 1121. Normally, if the existence of jurisdiction turns on disputed factual issues, the district court itself may resolve those factual disputes. *Id.* at 1121-22. However, the court "must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3.

**B.   Fed. R. Civ. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not

3

required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Under Rule 9(b), "a complaint alleging implied false certification [under the False Claims Act] must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule[,] or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule[,] or regulation." *Ebeid ex. rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The complaint's allegations need not identify particular claims submitted by the defendant; "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* at 998-99.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). Courts may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

4

## III. DISCUSSION

### A. Lack of Subject Matter Jurisdiction

Prior to its amendment in 2010, the False Claims Act ("FCA") provided that:

> No court shall have jurisdiction over an [FCA *qui tam*] action … based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2006).[1]

The public disclosure bar is triggered when three conditions are met: "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is 'based upon' the allegations or transactions publicly disclosed." *U.S. ex rel. Solis v. Millennium Pharmaceuticals*, 885 F.3d 623, 626 (9th Cir. 2018). For the action to be "based upon" the public disclosure, "the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations." *Id.*

> If X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.… [I]n a fraud case, X and Y inevitably stand for but two elements: a misrepresented state of facts and a true state of facts.

*U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016) (internal citations, quotation marks omitted).

---

[1] The 2010 amendments "transformed the public disclosure bar from a jurisdictional bar to an affirmative defense." *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017). However, "the amendments … are not retroactive." *Id.* at 1103. Because this action is based in part on fraud allegedly occurring before 2010, the jurisdictional version of the statute is applicable.

In order to invoke the public disclosure bar, Defendants rely on the following publicly disclosed facts:

- Fargo was a participant in the 8(a) business development program.

- The Navy IDIQ Contracts were set aside for 8(a) certified contractors.

- The Requests for Proposals for the IDIQ Contracts required joint venture proposals to be identified.

- Fargo did not submit an offer as a joint venture when bidding on the IDIQ Contracts.

- McConnell was "receiving a substantial share of the profit under the delivery orders" issued under the IDIQ Contracts.

ECF 39 at 6-7.

Plaintiff asserts numerous arguments in his opposition to Defendants' motion, but the Court need only reach one of them: that these facts do not disclose the allegedly fraudulent transaction on which this action is based. As noted above, in order to publicly disclose the fraudulent transaction, two things must be revealed: "a misrepresented state of facts and a true state of facts." *Raytheon*, 816 F.3d at 571. Although a true state of facts is identified—that McConnell was receiving a substantial share of the profit under the IDIQ Contracts—none of the publicly disclosed facts reveals any misrepresentations as to this state of facts.

Conversely, although the publicly disclosed facts reveal that Fargo did not represent itself as a joint venture with respect to the IDIQ Contracts, none of the publicly disclosed facts would warrant an inference that the true state of facts materially differed from this representation or that fraud was committed. Here, the action is "based upon" the allegation that McConnell and Fargo entered into an undisclosed *de facto* joint venture with respect to the IDIQ Contracts, in violation of SBA regulations. Importantly, however, there is no contention by either party that SBA regulations prohibited McConnell from receiving a "substantial share" of the profits under the IDIQ Contracts. Accordingly, this fact alone cannot be considered "substantially similar" to the allegation that McConnell and Fargo formed a *de facto* joint venture with respect to the IDIQ

6

Contracts. In the absence of any public disclosure of this aspect of the transaction, the public disclosure bar simply does not apply.

**B.  Failure to State a Claim**

### 1.  Elements for Liability Under the False Claims Act

A Plaintiff asserting a claim under the False Claims Act may advance any of three different theories: (1) a factually false claim; (2) an implied false certification; and (3) promissory fraud. *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170-71 (9th Cir. 2006). Under the first theory, "an archetypical *qui tam* False Claims action … the claim for payment is itself literally false or fraudulent." *Id.* at 1170. Under an implied false certification theory, "when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if the claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement … the defendant has made a misrepresentation that renders the claim 'false or fraudulent.'" *U.S. ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 901 (9th Cir. 2017). Finally, under a promissory fraud theory, "liability will attach to each claim submitted to the government under a contract, when the contract … was originally obtained through false statements or fraudulent conduct." *Id.* at 902.

Plaintiff here advances claims under an implied false certification theory and a promissory fraud theory. Counts 1 and 2 of the FAC assert a promissory fraud claim and an implied false certification claim respectively relating to the 2006 IDIQ Contract, while Counts 3 and 4 assert a promissory fraud claim and an implied false certification claim respectively with respect to the 2009 IDIQ Contract. Irrespective of the theory advanced, liability under the FCA requires four elements: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Campie*, 862 F.3d at 899. Defendants argue that none of these four elements have been adequately pleaded.

### a.  Falsity

Plaintiff alleges that Defendants deceived the government by deliberately failing to disclose that Fargo and McConnell had formed a *de facto* joint venture with respect to the IDIQ

7

Contracts. *See, e.g.*, FAC ¶ 61. "Because common-law fraud has long encompassed certain misrepresentations by omission, 'false or fraudulent claims' includes more than just claims containing express falsehoods.… [M]isrepresentations by omission can give rise to liability" as well. *Universal Health Srvcs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1999 (2016). This includes omissions regarding the joint venture status of 8(a) participants performing under an 8(a) contract:

> … Ab-Tech's claims clearly were fraudulent. The payment vouchers represented an implied certification by Ab-Tech of its continuing adherence to the requirements for participation in the 8(a) program. Therefore, by deliberately withholding from SBA knowledge of the prohibited contract arrangement with Pyramid, Ab-Tech not only dishonored the terms of its agreement with that agency but, more importantly, caused the Government to pay out funds in the mistaken belief that it was furthering the aims of the 8(a) program. In short, the Government was duped by Ab-Tech's active concealment of a fact vital to the integrity of that program. The withholding of such information—information critical to the decision to pay—is the essence of a false claim.

*Ab-Tech Const., Inc. v. U.S.*, 31 Fed. Cl. 429, 434 (1994).

Defendants argue that Plaintiff has not adequately pleaded that McConnell and Fargo entered into a joint venture within the meaning of SBA regulations, and therefore has not adequately pleaded that there was anything misleading about the failure to disclose the details of their agreement. During the relevant time period, SBA regulations defined a joint venture as "an association of individuals and/or concerns with interests in any degree or proportion … consorting to engage in and carry out … business ventures for joint profit … for which purpose they combine their efforts, property, money, skill, or knowledge, but not on a continuing or permanent basis for conducting business generally." 13 C.F.R. § 121.103(h) (2005).

Plaintiffs have adequately pleaded the existence of a joint venture plausibly falling within the meaning of this regulatory definition. The consulting agreement attached as Exhibit A to the

FAC includes provisions under which McConnell and Fargo were to combine their efforts and property to carry out the Task Orders issued under the 2006 Contract. *See* ECF 20-1 ¶¶ 8-11, 13-15. It also provides that, in lieu of receiving a salary for his efforts, McConnell would split the gross profits from roofing work performed under the contract. *Id.* at 1-2. Finally, the agreement provides that McConnell will "manage all aspects of the project in a manner similar" to what he had previously done for Western Roofing Service. *Id.* ¶ 13.

Defendants argue that under Defense Contract Audit Agency guidelines, determining whether a joint venture arrangement exists is a "fact-intensive inquiry," ECF 31 at 9, and "no one factor should be the sole determinant of whether the relationship is a joint venture," *id.* at 10 (quoting DCAA Guidance at 37-4). However, it is precisely for this reason that the dispute is not amendable to resolution on a motion to dismiss. In this procedural context, all reasonable inferences are to be drawn in favor of the plaintiff. The details of Defendants' Consulting Agreement are pleaded with particularity and, construed in the light most favorable to Plaintiff, they at least support a plausible inference that Defendants formed a joint venture within the meaning of 13 C.F.R. § 121.103(h). Accordingly, the Court finds that Plaintiff has adequately pleaded falsity under the False Claims Act.

### b. Scienter

Defendants also argue that Plaintiff has failed to adequately plead scienter. "Under the False Claims Act's scienter requirement, innocent mistakes, mere negligent misrepresentations, and differences in interpretation will not suffice to create liability. Instead, Relators must allege that [the defendant] knew that its statements were false, or that it was deliberately indifferent to or acted with reckless disregard of the truth of the statements." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (internal citations, quotation marks omitted).

Defendants argue that scienter is inadequately pleaded because the FAC lacks "factual allegations that would demonstrate that any of the Defendants knew that the Consulting Agreement violated [Fargo Pacific's] 8(a) status and rendered [Fargo Pacific] ineligible for the award of the roofing contracts." ECF 31 at 15. To the extent Defendants mean that the FAC's allegations do not conclusively demonstrate knowledge of falsity when construed in Defendants'

9

favor, they may well be correct. However, this is not the standard on a motion to dismiss. In this context, the court construes all factual inferences in the light most favorable to the plaintiff, *see Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), and asks only whether those facts and inferences "plausibly suggest[]" the necessary scienter, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Defendants' argument also fails because it treats a failure to show "knowledge" that the Consulting Agreement created a joint venture with a failure to show scienter. But the scienter requirement can also be met by allegations that Defendants were deliberately indifferent to whether the Consulting Agreement created a joint venture or that they acted with reckless disregard to whether the Consulting Agreement created a joint venture.

Considered under the proper legal standard, Plaintiff has adequately pleaded scienter. The FAC alleges, among other things, that:

- "Park testified under oath that he hid his profit-sharing agreement with McConnell from the Navy, because he knew that if the Navy found out, he would not get the 8(a) set-aside contracts." FAC ¶ 71(b).

- "Jay Park testified under oath in the Arbitration proceedings that he knew that if such an arrangement w[ere] disclosed to the SBA, it would not qualify under SBA rules for minority preference." *Id.* ¶ 78.

- "Park admitted when examined by the Arbitrator … that he and McConnell were fully aware that their agreement violated 13 CFR § 124.513. This was why Paragraph 20 of the Consulting Agreement stated that the 'terms of this agreement will be kept confidential by both parties.'" *Id.*

These allegations, accepted as true and construed in the light most favorable to the plaintiff, support the plausible inference that Defendants knew that they had formed what the SBA would consider a joint venture, or that they were deliberately indifferent to or acted with reckless disregard to whether they had formed what the SBA would consider a joint venture.[2] Accordingly, the Court finds that Plaintiff has adequately pleaded the scienter requirement.

---

[2] This conclusion is not altered by the fact that "the very question of whether the Consulting Agreement is the legal equivalent of a joint venture under SBA regulations is … subject to

### c. Materiality

Defendants also argue that the FAC fails to adequately plead that compliance with SBA regulations regarding joint ventures was material to the Navy's decision to pay Fargo Pacific, because "[a]t most, the FAC alleges that the SBA would have had the *option* to terminate FPI from the 8(a) program had it known of the existence of the Consulting Agreement." ECF 31 at 19. "Section 3729(b)(4) defines materiality using language … employed to define materiality in other federal fraud statutes: '[T]he term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" *Escobar*, 136 S. Ct. at 2002 (quoting 31 U.S.C. § 3729(b)(4)). The Court of Federal Claims has noted that the kind of implied certification at issue here has such a natural tendency to influence the Government's payment decision:

> [B]y deliberately withholding from SBA knowledge of the prohibited contract arrangement with Pyramid, Ab-Tech … caused the Government to pay out funds in the mistaken belief that it was furthering the aims of the 8(a) program.… The withholding of such information—information critical to the decision to pay—is the essence of a false claim.

*Ab-Tech Const., Inc. v. U.S.*, 31 Fed. Cl. 429, 434 (1994).

Additionally, Plaintiff submits a letter from the SBA to Fargo Pacific, in which the SBA notes that an undisclosed, unapproved joint venture agreement would render Fargo Pacific ineligible to continue performance on an 8(a) contract. Specifically, the letter states: "Please be aware … that it is very easy to create a situation where a de facto joint venture is created.… If the SBA were to declare your project a joint venture, then you would no longer be able to perform on that contract since the joint venture did not obtain prior approval." ECF 38-1, Ex. A at 2. Plaintiff seeks judicial notice of this letter as a matter of public record because the SBA

---

differing interpretations." ECF 31 at 16. The allegations in the FAC support the plausible inference that Defendants' understood the Consulting Agreement to disqualify Fargo Pacific from Section 8(a) set-aside contracts. The existence of other potential interpretations is irrelevant to whether the scienter requirement has been adequately pleaded with respect to Defendants themselves.

provided it to Plaintiff in response to a Freedom of Information Act ("FOIA") request. *See* ECF 38-1, Ex. A at 1. Defendants do not contest that the letter itself is a matter of public record subject to judicial notice; however, they argue that the letter is actually referring to a teaming agreement Fargo Pacific had previously entered into with Western Roofing. *See* ECF 40 at 10.

The Court finds such disputes over the proper inferences to be drawn from a particular document inappropriate for resolution on a motion to dismiss. Ultimately, Plaintiff proffers the letter merely to corroborate what is already facially plausible from the allegations in the FAC: that the concealment of an unapproved joint venture has a "natural tendency" to influence the Government's payment decision and is therefore material for purposes of the False Claims Act. Accordingly, the Court finds that Plaintiff has adequately pleaded materiality.

### d.    Claim for Payment

In order to satisfy the heightened pleading standard under Rule 9(b), a plaintiff asserting claims under the False Claims Act must either (1) identify representative examples of false claims, or (2) "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (internal quotation marks omitted). Defendants argue that Plaintiff has done neither. The Court disagrees.

The FAC alleges the specific details of agreements between Defendants Fargo Pacific and McConnell to perform work under two federal contracts. Both the agreements and the federal contracts are identified with specificity. *See* FAC Exs. A-E; FAC ¶ 1. As explained above, the FAC also adequately pleads that the provisions of the agreements between Fargo Pacific and McConnell rendered Fargo Pacific ineligible to perform under the federal contracts at issue. Accordingly, the FAC adequately pleads that Fargo Pacific's express and implied certifications to the SBA that it remained eligible to perform under the contracts were false.

Further, the FAC alleges that there were 31 task orders under the 2006 IDIQ Contract totaling $9.68 million, FAC ¶ 107, with the first signed on or about October 24, 2006 and the last completed on or about March 1, 2010, FAC ¶ 97. The FAC alleges that there were 46 task orders under the 2009 IDIQ Contract totaling $20.4 million, FAC ¶ 141, with the first signed on or

12

about September 16, 2009 and the last completed on or about September 21, 2013, FAC ¶ 131. These specifically alleged facts are reliable indicia that lead to a strong inference that claims were actually submitted. This inference is strong because, if claims were not actually submitted, it would mean either that Fargo Pacific performed at least some of these task orders without requesting payment for the work or that Fargo Pacific did not perform the work but the Navy continued issuing task orders to Fargo Pacific anyway. The Court finds that Plaintiff has adequately pleaded Defendants submitted claims for payment under the 2006 and 2009 IDIQ Contracts.

**2. Compliance with Rule 9(b)**

Defendants also argue generally that the FAC fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). However, as noted above, each element of fraud under the False Claims Act has been pleaded with particularity. Plaintiff alleges the specific terms of the Consulting Agreement, which—although perhaps subject to disagreement—permit the plausible inference that Defendants were acting as a *de facto* joint venture. Plaintiff further alleges that this joint venture arrangement was purposely not disclosed to the SBA in Fargo Pacific's annual 8(a) program certifications or to the Navy in Fargo Pacific's bid for the 2009 IDIQ Contract[3] or its claims for payment under either the 2006 or the 2009 IDIQ Contracts. Plaintiff also identifies provisions of the SBA's rules and regulations, as well as parts of the SBA's annual recertification form that require joint venture arrangements to be disclosed and preapproved by the SBA.

Although there may be a genuine factual dispute as to whether the arrangement formed between Defendants constituted a "joint venture" within the meaning of the SBA's regulations, Plaintiff has pleaded all the details that could reasonably be expected of any plaintiff proceeding under the False Claims Act. The Court concludes that the FAC adequately pleads the circumstances constituting fraud with particularity, as required under Fed. R. Civ. P. 9(b).

---

[3] The 2006 IDIQ Contract was awarded before the formation of the Consulting Agreement, an issue that is discussed below.

### 3. Claims for Payment Submitted Prior to the Formation of the November 28, 2007 Consulting Agreement

Defendants argue that the FAC fails to state a claim with respect to any allegedly false claims filed by Defendants before the Consulting Agreement was entered into on November 28, 2007. Count 1 of the FAC attempts to impose liability on such claims by advancing a promissory fraud theory, stating that the 2006 IDIQ Contract itself was obtained through fraud, and thus liability attaches to any claims for payment made under that contract. However, the FAC fails to allege with particularity any facts plausibly suggesting that a joint venture existed at the time the 2006 IDIQ contract was awarded. The FAC's only attempt at alleging fraudulent conduct in obtaining the 2006 IDIQ Contract is the conclusory assertion that "when [McConnell] and Fargo [Pacific] obtained the 2006 IDIQ Contract, it was never their intention to follow the SBA regulations regarding these special set aside contracts." FAC ¶ 87. No supporting facts are alleged from which this conclusory assertion might be inferred. Accordingly, the Court finds the FAC's claim for fraudulent inducement of the original award of the 2006 IDIQ Contract insufficiently pleaded. Because this insufficiency could be cured by additional allegations, leave to amend will be granted.[4]

However, the Court notes that this conclusion does not affect the viability of Plaintiff's implied certification theory for claims made after the Consulting Agreement was entered into, nor does it affect Plaintiff's promissory fraud theory that Defendants fraudulently induced the SBA to recertify Fargo Pacific under the 8(a) program—thus permitting Fargo to continue performing its IDIQ Contracts under the 8(a) program—by concealing the Consulting Agreement and the joint venture arrangement from the SBA in Fargo Pacific's annual recertification forms.

---

[4] The Court notes, however, that unless Plaintiff is aware of additional substantive facts that were omitted from the FAC, amendment of the complaint will likely be futile. Because the Court has already drawn all reasonable inferences in favor of Plaintiff in ruling on this motion to dismiss, any amendment that merely elaborates on the inferences that might be drawn from the facts already alleged will fail to cure the deficiency.

14

### 4. Statute of Limitations

Defendants also argue that any attempt to impose liability for violations of the False Claims Act occurring before August 24, 2007 is time-barred. The Court agrees. The False Claims Act only permits an action for violations thereof to be brought within the later of (1) 6 years after the date on which the violation of the False Claims Act occurred; or (2) "3 years after the date when facts material to the right of action are known or reasonably should have been known … but in no event more than 10 years after the date on which the violation is committed." 18 U.S.C. § 3731(b). Taken together, these provisions create an absolute bar on all claims brought more than ten years after the violation. Plaintiff attempts to avoid dismissal by requesting that the Court "exercise discretion and defer ruling on this defense until discovery is had and the record is more complete, or until [the] plaintiff is given an opportunity to amend." ECF 38 at 24. Under this statute, however, the ten-year bar is straightforward and admits of no exception. Plaintiff has identified no potential discovery or amendment to the complaint that would permit him to pursue claims for violations of the False Claims Act that occurred before August 24, 2007. Accordingly, any claims for alleged violations of the False Claims Act occurring before August 24, 2007 are dismissed without leave to amend.

## IV. CONCLUSION

Defendants' motions to dismiss are granted in part and denied in part. The motion to dismiss for lack of jurisdiction is denied in its entirety. The motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED WITHOUT LEAVE TO AMEND** with respect to alleged violations of the False Claims Act before August 24, 2007; **GRANTED WITH LEAVE TO AMEND** with respect to alleged violations of the False Claims Act from August 24, 2007 to November 28, 2007; and **DENIED** with respect to alleged violations of the False Claims Act from November 28, 2007 onward. Any amended complaint shall be filed no later than May 4, 2020.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Apr 23, 2020**

15