IN THE DISTRICT COURT OF GUAM

| UNITED STATES OF AMERICA, *ex rel.* and RAVINDRA GOGINENI, | CIVIL CASE NO. 17-00096 |
|---|---|
| Plaintiffs/Relator, | **REPORT & RECOMMENDATION** to Deny Relator's Motion for Summary Judgment re Applicability of the Presumed Loss Rule (ECF No. 91) |
| vs. | |
| FARGO PACIFIC INC., EDGAR L. MCCONNELL, and JAY S.H. PARK, | |
| Defendants. | |

This is an action brought under the False Claims Act, 31 U.S.C. § 3729 *et seq.* Ravindra Gogineni (the "Relator") alleges that defendants Fargo Pacific Inc. ("Fargo"), Edgar L. McConnell and Jay S.H. Park (collectively the "Defendants") defrauded the United States by entering into secret agreements that made Fargo ineligible for the government roofing contracts it was awarded as part of the Small Business Administration's ("SBA's") 8(a) development program. Now pending before the court is the Relator's motion for partial summary judgment[1] with regard to the applicability of the presumed loss rule set forth in 15 U.S.C. § 632(w) to the Relator's claims alleged in Counts Three and Four of the Second Amended Complaint ("SAC").[2] *See* ECF No. 91. Having reviewed

---

[1] The Defendants moved for summary judgment, *see* ECF Nos. 88 and 94, and on April 5, 2023, the court granted in part and denied said motions, with summary judgment being granted for the Defendants as to Count One. *See* Opinion and Order, ECF No. 163.

[2] Counts Three and Four of the SAC involve the 2009 IDIQ Contract. Specifically, Count Three asserts a claim under the promissory fraud theory in that the Defendants fraudulently obtained the 2009 IDIQ Contract by failing to disclose to the Navy and the SBA the existence of the 2007 Consulting Agreement and the First Amended Agreement. Count Four of the SAC asserts an

the parties' filings and relevant case law, the court now issues this Report and Recommendation to deny the Relator's motion.

### FINDINGS OF FACT[3]

In a letter dated September 17, 2009, the U.S. Navy notified Jay Park, the President and General Manager of Fargo, that Fargo had been awarded the 2009 Indefinite Delivery/Indefinite Quantity contract (the "2009 IDIQ Contract"). *See* Decl. Joyce C.H. Tang, Ex. A at 2,[4] ECF No. 92-1. The 2009 IDIQ Contract had a base period of 12 months, with four 12-month options the government could exercise for a total maximum duration of 60 months. *Id.* at 30.[5] The 2009 IDIQ Contract was "set-aside for 8(a) firms certified for participation in the 8(a) program serviced by the 8(a) Hawaii District Office." *Id.* at 1.[6]

A total of 46 task orders were issued under the 2009 IDIQ Contract. *See* Decl. Joyce C.H. Tang, Exs. B-D, ECF Nos. 92-2 to 92-4. Fargo was awarded Task Order 12 on March 15, 2011, *id.*, Ex. B at 3,[7] ECF No. 92-2, with the remaining task orders awarded thereafter. *Id.*, Exs. B and C, ECF Nos. 92-2 and 92-3. Fargo submitted 152 Contractor's Invoices for payment under the 2009 IDIQ Contract task orders on or after September 27, 2010. *Id.*, Ex. H, ECF No. 92-8.

### LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any

---

implied false certification claim against the Defendants based on claims for payment they submitted under the 2009 IDIQ Contract.

[3] Much of the facts have already been discussed in the court's previous Report and Recommendation. *See* R. & R., ECF No. 146. The court sets forth only the additional limited facts that are relevant to the issue before the court.

[4] The page reference here is to the page number in the CM-ECF electronically generated footer.

[5] The pinpoint reference here is to the internal page number of the 2009 IDIQ Solicitation, Offer, and Award as noted on the upper right corner of Exhibit A.

[6] The pinpoint reference here is to the internal page number of the 2009 IDIQ Solicitation, Offer, and Award as noted on the upper right corner of Exhibit A.

[7] This page reference is to the page number in the CM-ECF electronically generated footer.

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1988). "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). "[T]he judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## ANALYSIS

The issues raised in the Relator's Motion for Partial Summary Judgment are narrow. The Relator specifically requests "partial summary judgment that the presumed loss rule, 15 U.S.C. § 632(w), and the 'deemed certifications' under § 632(w)(2)(A) apply to the Relator's claims alleged in Counts Three and Four of the SAC." Mot. Partial Summ. J. at 20, ECF No. 91. If the presumed loss rule applies, the Relator further requests that the court find that "the value of the goods or services received by the government are neither deducted in determining damages nor can such evidence be used to rebut the presumption that the loss is the total amount the government expended on the contract." *Id.*

On September 27, 2010, the Small Business Jobs Act of 2010 was signed into law. *See* Pub. L. No. 111-240, 124 Stat. 2504 (2010). This new law amended the Small Business Act to include

*United States of America, ex. rel. and Ravindra Gogineni vs. Fargo Pacific, Inc. et al.*, Civil Case No. 17-00096
Report and Recommendation re Relator's Motion for Partial Summary Judgment
page 4 of 9

the "presumed loss rule," codified at 15 U.S.C. §632(w), which provides:

> [i]n every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation.

15 U.S.C. § 632(w)(1).

Under this new provision, there is a presumption that the government suffers a loss equal to the entire value of the contract when it relies on a contractor's misrepresentation of its size or status to award a set-aside contract to an other ineligible business. "[T]he alleged harm here is the loss of business and experience going to eligible small businesses. This harm is not related to whether or not the [g]overnment received the services it bargained for under the contract." *United States ex rel. Savage v. Washington Closure Hanford LLC*, No. 2:10-CV-05051-SMJ, 2017 WL 3667709, at *4 (E.D. Wash. Aug. 24, 2017).

1. <u>Whether Fargo is exempt from the presumed loss rule as a certified small business</u>

The Defendants have raised a number of arguments against the applicability of the presumed loss rule to the facts of this case. One such argument is that the presumed loss rule does not apply because, by its plain terms, the statute only applies to "a business concern *other than* a small business concern [that] willfully sought and received the award by misrepresentation." 15 U.S.C. § 632(w)(1) (emphasis added). Defendants maintains that Fargo was a certified small business when it submitted its proposal for the 2009 IDIQ Contract, and thus the rule does not apply to as a "small business concern." The Defendants further argue that the rule only applies to a misrepresentation of size by a business concern other than a small business.

The Relator counters that under the statutes, a "small business concern . . . shall be deemed to be one which is *independently owned and operated* and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1) (emphasis added). The Relator contends that although Fargo was 8(a) certified, it was not independently owned and operated because under the 2007 Consulting Agreement and subsequent amendments, Park and Fargo did not have ultimate managerial and supervisory control over the operations of the company, as argued in the Relator's Opposition to the

Defendants' motions for summary judgment.

The court concurs with the Relator's position. There are genuine issues of fact as to whether Fargo was indeed a "small business concern" when it submitted its proposal for and was awarded the 2009 IDIQ Contract. Whether or not Fargo was "independently owned and operated" is an issue for the jury to resolve. The court cannot conclude at this stage that the presumed loss rule is inapplicable as the Defendants assert because Fargo was a small business concern.

Additionally, the court is unpersuaded by the Defendants' argument that the presumed loss rule only applies to misrepresentations of size by a business concern. The Defendants are attempting to insert a size limitation into the statutory language regarding the type of "misrepresentation" that simply is not there. The plain language of the statute makes it applicable to "a business concern other than a small business concern [that] willfully sought and received the award by misrepresentation." It does not say "willfully sought and receive the award by misrepresentation *of its size*." Thus, the misrepresentation can be about a business concern's size or even its status. Here, the Relator claims that Fargo made a misrepresentation about its status. The SAC alleges that Fargo misrepresented that it was seeking the award for itself when in fact it sought the 2009 IDIQ Contract on behalf of an undisclosed joint venture. Whether or not Fargo willfully misrepresented its status when it sought and received the 2009 IDIQ Contract award is a matter to be resolved at trial.

2.  <u>Whether the presumed loss rule applies to task orders</u>

Another argument raised by the Defendants is that the presumed loss rule does not apply because the proposal for and the award of the 2009 IDIQ Contract occurred well before the enactment of the Small Business Jobs Act of 2010. In so arguing, the Defendants further assert that the presumed loss rule does not apply to the 2009 IDIQ Contract task orders issued after September 27, 2010.

Because the 2009 IDIQ Contract was awarded to Fargo before the passage of the presumed loss rule, if the rule does apply, it must apply to the task orders awarded under the 2009 IDIQ Contract. The court begins its inquiry by turning to the plain terms of the statute. The presumed loss rule applies to a "contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant" that has been set aside for small business concerns. 15 U.S.C.

§ 632(w)(1). These five types of contracts or agreements can also be found in the "Deemed certifications" provisions set forth in Section 632(w)(2). The core question the court must resolve is whether the task orders issued after September 27, 2010 – the enactment of the Small Jobs Act of 2010 – fall under one of the five types of contracts such that the presumed loss rule would apply.

The Relator attempts to refute the Defendants' contention regarding the inapplicability of the presumed loss rule to task orders by asserting that under the SBA's regulations, the term "contract" "has the same definition as set forth in FAR 2.101 (48 U.S.C. 2.101) and includes *orders* issued against Multiple Award Contracts and orders competed under agreements where the execution of the order is the contract[.]" 13 C.F.R. § 125.1 (emphasis added). The Federal Acquisition Regulations, in turn, defines a "contract" to mean

> a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts include (but are not limited to) awards and notices of awards; *job orders or task letters* issued under basic ordering agreements; letter contracts; *orders*, such as purchase orders, under which the contract becomes effective by written acceptance or performance; and bilateral contract modifications.

FAR 2.101 (emphasis added).

The issue of whether the term "contract" encompasses task orders was directly addressed by the SBA's Office of Hearings and Appeals ("OHA") in *Size Appeal of: Tista Sci. & Tech. Corp., Appellant re: Addx Corp.*, SBA No. SIZ-5529 (Jan. 28, 2014), 2014 WL 497158. There, the unsuccessful offeror – TISTA Science and Technology Corporation ("TISTA") – filed a bid protest challenging the award of a task order to Addx Corporation ("Addx"). The task order had been set aside for Service-Disabled Veteran-Owned Small Business Concerns with a size standard of $14 million average annual receipts. *Id.* at *1. TISTA argued that the Request for Quotations ("RFQ") for the task order required size recertification, and at the time the proposal was submitted, Addx was no longer a small business. *Id.* at *3. The SBA's Area Office eventually determined that the RFQ did not require size recertification, and if it was required, Addx was still eligible as a small business for the RFQ because its annual receipts did not exceed $14 million on the date Addx most recently recertified. *Id.*

TISTA then appealed to OHA and sought to overturn the Area Office's finding that Addx was a small business. *Id.* at *4. One of the main issues on appeal was "one of statutory construction, specifically whether the scope of 15 U.S.C. § 632(w)(2) includes task and delivery orders placed under long-term contracts." *Id.* at *8. In addressing this issue, the administrative judge reasoned

> [i]t is true, as [TISTA] observes, that FAR 2.101 defines "orders" as a type of "contract." Thus, use of the word "contract" in 15 U.S.C. § 632(w)(2) arguably could be understood as encompassing task and delivery orders. Nevertheless, I find this contention unpersuasive for two reasons. First, the FAR's definition of "contract" is quite broad, and includes a variety of instruments involving expenditure of appropriated funds, such as bilateral contract modifications, which typically would not contain small business certifications. It would make little sense, and fundamentally alter existing law, to conclude that size certification or recertification occurs whenever a small business executes a bilateral contract modification. It therefore appears that Congress likely did not to use the word "contract" in the broad FAR sense of the term. Second, the same legislation which gave rise to 15 U.S.C. § 632(w)(2) also contained provisions on the set-aside of orders. *See* Small Business Jobs Act of 2010, Pub. L. 111-240 § 1331 (amending 15 U.S.C. § 644(r)). Thus, Congress was fully capable of distinguishing "contracts" and "orders," and did so elsewhere in the same legislation. This further supports the notion that the drafters of 15 U.S.C. § 632(w)(2) did not intend the word "contract" to encompass orders placed against existing contracts.

*Id.* at *9.

The court finds the analysis by the SBA's OHA convincing. As discussed by the administrative judge, the Small Business Act of 2010 also amended 15 U.S.C. § 644(r),[8] which used

---

[8] This subsection provides in its entirety:

(r)    Multiple award contracts

Not later than 1 year after September 27, 2010, the Administrator for Federal Procurement Policy and the Administrator, in consultation with the Administrator of General Services, shall, by regulation, establish guidance under which Federal agencies may, at their discretion—

(1) set aside part or parts of a multiple award contract for small business concerns, including the subcategories of small business concerns identified in subsection (g)(2);
(2) notwithstanding the fair opportunity requirements under section 3406(c) of title 10 and section 4106(c) of title 41, set aside orders placed against multiple award contracts for small business concerns, including the subcategories of small business concerns identified in subsection (g)(2); and
(3) reserve 1 or more contract awards for small business concerns under full and open multiple award procurements, including the subcategories of small business concerns identified in subsection (g)(2).

the term "side aside orders." Because Congress distinguished between the terms "contracts" and "side aside orders" in the same legislation, it is presumed that Congress intended to omit task orders from the presumed loss rule in 15 U.S.C. § 632(w). Furthermore, as noted by the Defendants, the SBA submitted its own comments to OHA in the *Tista* appeal. *Id.* at *5. The SBA's position was that 15 U.S.C. § 632(w)(2) "does not apply to the mere proposal for a small business set-aside task order that is awarded pursuant to an exiting contract" because the statute "does not specifically discuss task and delivery order awards." *Id.* The court finds the SBA's position in *Tista* regarding the construction of the statutory scheme persuasive. While the Relator cites to two other OHA decisions that appear to indicate that task orders are included in the deemed certifications enumerated under Section 632(w)(2), the court does not find these cases persuasive since such comments by OHA were made prior to the 2014 *Tista* decision and were merely dicta in those decisions. *See Size Appeal of: Pro. Project Servs., Inc., Appellant*, SBA No. SIZ-5411 (Oct. 26, 2012), 2012 WL 5363621;[9] *Size Appeal of: Navarro Rsch. & Eng'g, Inc., Appellant*, SBA No. SIZ-5473 (May 29, 2013), 2013 WL 2450033.[10] Accordingly, the court concurs with the Defendants that the presumed

---

[9] This OHA appeal involved the award of a task order that had been set aside for a small business concern and awarded to Professional Project Services ("appellant"). *Id.* at *2. A disappointed offeror protested the appellant's small business size. *Id.* The SBA Area Office identified various affiliates of the appellant and determined that appellant was not a small business under the applicable NAICS code. *Id.* at *4. The appealed followed, but the ultimate issues raised did not directly address whether Section 632(w)(2) was applicable to task orders. In addressing a procedural issue as to the timeliness of the initial size protest by the disappointed offeror, the court stated in a footnote "[b]ecause the instant RFQ made clear that the task order was set-aside exclusively for small businesses, offerors that submitted proposals for the order may have certified themselves as small businesses, even in the absence of an express requirement to self-certify." *Id.* at *7, n.5. This is simply dicta.

[10] *Navarro* involved the award of a task order that was set aside entirely for small businesses, but the "solicitation did not state that each offeror must certify itself as a small business." *Id.* at *1. The appellant was initially selected for the award, but two competing offerors protested appellant's size. *id.* The SBA Area Office "found that, by submitting a proposal for the task order, [a]ppellant certified itself as a small business because recent amendments to the Small Business Act provide that the mere submission of a proposal on a small business set-aside shall be deemed an affirmative, willful, and intentional certification of small business size status. (Size Determination Nos. 3-2013-051 and -052, at 9, citing 15 U.S.C. § 632(w)(2))." *Id.* (internal quotation marks omitted). The appellant then appealed the size determination, but the procuring agency later notified

loss rule does not apply to the task orders awarded under the 2009 IDIQ Contract.[11]

## RECOMMENDATIONS

Based on the above discussion, the below-signed judge recommends that the court deny the Relator's Motion for Partial Summary Judgment and find that, as a matter of law, the presumed loss rule does not apply to the task orders awarded to Fargo under the 2009 IDIQ Contract.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Jul 21, 2023

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

---

the SBA OHA that the agency cancelled the award to appellant and awarded it instead to a different offeror. *Id.* In the *Navarro* decision, the issue before OHA was whether the appeal was moot since there was no longer any possibility that the appellant would be awarded the task order. *Id.* at *3. The administrative judge found the appeal to be moot and dismissed the matter without discussing or analyzing the underlying statement made by the Area Office. This decision has no bearing on the issue of whether Congress intended the presumed loss rule to cover task orders.

[11] Having reached this conclusion, there is no further need to address the other issues raised in the parties' briefs.